# The Wabash Railway Company

## v.

## Charles Brown, Adm'r.

Railroads—Liability to employes for failing to keep a proper fence—Evidence.—In an action against a railroad company for an injury caused by the failure of the company to maintain a proper fence along its line, whereby cattle escaped and got upon the track, it is necessary to show that the cattle got upon the track through the fence at a place where it was defective and insufficient to prevent stock from getting on the road. It is not sufficient to show that the fence on each side of the road was generally poor and defective.

*Quære:* Whether there exists a right of recovery by employes against railroad companies for a failure to fence their land as required by the statute.

Appeal from the Circuit Court of Sangamon county; the Hon. H. M. Vandeveer, Judge, presiding.

Messrs. Hay, Green & Littler, for appellant; as to the obligations assumed by the purchasers of the old company, cited St. Louis R. R. Co. v. Miller, 43 Ill. 199.

That proof of the condition of the fence at the point where the cattle broke through, is material: Ill. Cent. R. R. Co. v. Swearingen, 33 Ill. 289; Same case, 47 Ill. 206; Great Western R. R. Co. v. Hawks, 36 Ill. 282.

Mr. N. M. Broadwell and Mr. C. W. Brown, for appellee; as to the extent of the obligations assumed by the purchase of the former road, cited 2 Story's Eq. Jur. § 1244.

A court of chancery having obtained jurisdiction, retains it for all purposes: Morgan v. Roberts, 38 Ill. 65; Meeker v. Meeker, 75 Ill, 260; 1 Story's Eq. Jur. § 64.

A receiver may be sued for a tort, without asking leave of the court appointing him: Allen v. Railroad, 42 Iowa, 683; Kinney v. Crocker, 18 Wis. 74; Blumenthal v. Brainerd, 38 Vt. 402; Camp v. Barney, 11 N. Y. 373; Murphy v. Holbrook, 20 Ohio St. 137.

The deceased had a right to presume that the road and its accessories would be kept in a safe condition, and is not

presumed to know of defects in the road or its appurtenances: C. & N. W. R. R. Co. v. Swett, 45 Ill. 197; Dale v. Railroad, 63 Mo. 455.

Against the objection that the decree in this case made no provision for a redemption from a sale: Boestor v. Byrne, 72 Ill. 466.

DAVIS, J.   This was a bill in chancery, filed by appellee against appellant, to recover damages for the death of Burns Roberts.

The bill charges that on the 10th day of July, 1875, Roberts was fireman on an engine operated by J. D. Cox, receiver of the Toledo Wabash and Western Railway; that while Roberts was so acting, the engine was overturned and by means thereof Roberts lost his life; that said accident occurred by reason of said engine running against some cattle that were lying on the track of the railroad; that the running of the engine against said cattle was not the fault of Roberts, but, on the contrary, he was carefully performing his duty; that the cattle got on the railroad through the negligence of said receiver who was operating the road, and who was negligent in this, that he failed to keep a lawful fence along the track of said road. such as the law required—sufficient to keep stock from getting on the road.

That said Cox, knowingly and willfully allowed the fences along said road to become so frail and insufficient as not to be secure against stock, and to remain in a frail condition about two months previous to the accident, and that the cattle got on said road through the poor and insufficient fence.   That Roberts left surviving him a widowed mother, who was depending on him for support, who is left destitute by his death.   That in proceedings commenced against the Toledo, Wabash and Western Railway Company, in which said Cox was appointed receiver, a decree was rendered for the sale of said railroad, and on the 10th of June, 1876, the same was sold to John W. Ellis, A. M. White, J. T. Martin, G. J. Sweney and H. A. V. Post, and the same and all its property and franchises were conveyed to the purchasers, who afterwards conveyed said railroad, equipments,

etc. to the appellants, who accepted the same and took possession of the road under said conveyance and subject to all its provisions. That in such conveyance it is expressly provided, " that the said estate and interest are hereby charged with, and shall pass by virtue of these presents, subject to the payment of all liabilities incurred in respect to the said railway, or its business, by the said Jacob D. Cox, as receiver, during the legal proceeding mentioned." The bill further charges that by the provisions of said deed, and the acceptance thereof by said appellant, it is chargeable in equity with a lien for the payment of appellee's claim. Answers were filed by appellant and Jacob D. Cox, receiver, and on the hearing the court found that Roberts came to his death by the negligence of Jacob D. Cox in the operation of the railroad, found the damages of the appellee to be $2,500.00, and decreed that appellant should pay such sum within thirty days, or a sale by Master. To reverse this decree appellant brings this appeal.

The only question we deem necessary to pass upon is whether the evidence given on the hearing sustains the decree of the court below.

To sustain the finding, the testimony should show that the cattle got upon the track through the fence at a place where it was defective and insufficient to prevent stock from getting on the road. It will not do to show that the fence on each side of the road was generally poor and defective. If the fence where the cattle entered upon the track was in fact in good repair and sufficient to prevent stock from getting thereon, then it was through no fault or negligence of the receiver that the cattle got upon the track, and he should not be held responsible for any injury occasioned thereby.

The evidence introduced by appellee as to the condition of the fence where the cattle got upon the track is uncertain and unsatisfactory, and leaves the mind in doubt whether the witnesses testifying knew where the cattle entered upon the track, and what the condition of the fence was at that place.

Newland swears that he knew the condition of the fence along the sides of the road where said accident occurred would not prevent stock from getting upon the track of said road;

that the fence on either side of the road was not sufficient to turn stock, and stock could get on to said railroad track, the fence being of little or not any obstruction. Wilder's testimony is almost the same as Newland's, with the addition that the fence was in poor condition for some distance where the accident occurred. Campbell testified substantially as the others did. Lamb's testimony is similar to Newland's, with the addition that the cattle got on said road through the fence of said road, and that said fence was not a lawful fence, and not sufficient to turn cattle and other stock, and that the fences on either side of said road were not lawful fences. On the other side the testimony for appellant was definite, certain and to the point, and tended very strongly to show that at the time of the accident the fence had been repaired, was then in good condition, and had been broken down by the cattle in breaking out of the field in which they had been confined. English testified that he examined the fence, saw a place where stock got out of the field and on the track; it was a four-board fence; measured it; it was four feet eight inches high on the inside; outside not quite so high, owing to the embankment; recollection is that there were two new boards at the top; the others were old boards; the top board was broken down where the cattle got out the field; not merely the nail out; the board itself was broken crosswise over the edge of the other. The posts at that place were old and had the appearance of having been recently re-set; know so by shaking them; found them solid in the ground; boards at the bottom are old; at the top new boards; fence indicated that it had been repaired lately; the board was broken down, not pulled off; it would appear the stock in getting over had mounted the fence and broken it down, rather than gone through it; crushed it down; there was hair that the cattle raked off on the board.

Melville testified: Know where a gap was made through the fence at time of accident. Where the cattle got through the fence was about one hundred and fifty yards west of where the engine went off the track. Had passed over the road the day before. After the accident, was there by half past five or six the next morning. There was no gap on either side

when there first. The next morning first went to the wreck with a physician; then went to where the cattle got in; found five cattle dead; then came back to examine and see where stock got in; found a gap in the corner of the fence in Jewsberry's pasture; he had a calf lot; left a gap between the railroad fence and this calf lot about a panel. On through this he had a gate into another field; then a gate round. Came across the railroad into the barnyard. Right up in this corner by the gate was where the cattle got over the fence. Tracked the cattle to the place where he found the cattle themselves. The fence was a four-plank fence. Where the cattle got over there were two new boards. Recently Mr. Ball, the carpenter, had gone through and patched up the holes in the fence. At that point he put in two new planks. It appears the cattle had jumped on the fence. The nails were holding on and the planks were broken. Plank where the post was was broken off from the post on the other side.

Means testified: Know the fence in question. Worked on road two months before accident. Passed along the road three or four times a day. Was not there after accident occurred. It was a moderately good fence—a four-board fence.

Stephens testified: Work on the section under Melville on the Wabash road. Have helped to repair the fence for three or four years now. Remember the wreck when Roberts was killed. Part of the fence along Jewsberry's farm was good; part not good. Along in the hollow where the fence was broken was probably the best part of the fence. Fence part good and part not good. Had been built for some time. Should think that point was the best part of the fence. It is fenced all the way to Jacksonville. Did not make a personal examination of where cattle got in. Was laboring at the wreck. Others made the examination. My recollection is, it was the best part of the fence. There might be a few places where the cattle could get through up east there. Do not mean they could get through without breaking the fence.

This was all the evidence offered, and we do not think it proves the receiver to have been guilty of any negligence, and it therefore fails to sustain the decree of the court below, and it must be reversed.

Without deciding the point we cannot refrain from expressing a doubt as to the right of recovery by employes against railroad companies for a failure to fence their roads as required by the statute.   In Redfield on the law of Railways, Vol. 1, page 490, it is held that railways are not bound to maintain fences upon their roads so as to make them liable to their own servants for injuries happening in consequence of the want of such fences.   And where the statute makes them liable for all injuries done to cattle, etc., by their agents or instruments until they fence their road, the liability extends only to the owners of such cattle or other animals, and this liability is the only one incurred.   It was so held in Langlois v. Buffalo and Rochester Railway, 19 Barbour, 364.

Reversed and remanded.